BRENT O. HATCH (5715)
ADAM M. PACE (14278)
**HATCH LAW GROUP, P.C.**
22 East 100 South
Salt Lake City, Utah 84111
(801) 869-1919
hatch@hatchpc.com
pace@hatchpc.com

ROBERT S. FRENCHMAN (*pro hac vice* application forthcoming)
LANCE O. ADUBA (*pro hac vice* application forthcoming)
**DYNAMIS LLP**
233 Broadway, Suite 1750
New York, NY 10279
(212) 229-3920
rfrenchman@dynamisllp.com
laduba@dynamisllp.com

*Attorneys for Plaintiff Trevor R. Milton*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| TREVOR R. MILTON,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER S. ESSICK and PAUL LACKEY,<br><br>Defendants. | **COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case No. 2:26-cv-01005<br><br>Judge ________________________<br><br>Magistrate Judge _____________ |

Plaintiff Trevor R. Milton, by and through his undersigned attorneys, brings this action against Defendants Christopher S. Essick and Paul Lackey and alleges as follows:

**PRELIMINARY STATEMENT**

1. No American should ever have to confront allegations like these in a federal court filing. This Complaint alleges that Christopher S. Essick, a Special Agent of the Federal Bureau of Investigation ("FBI") assigned to the Counterintelligence Division of the New York Field Office operated concealed social-media accounts while repeatedly taking financial positions adverse to the Nikola Corporation ("Nikola") and participating in a coordinated campaign against Trevor Milton and prospective witnesses in Milton's federal criminal case. Behind those accounts, Essick demanded that prospective defense witness Jason Roycht "turn states evidence," repeatedly called for his indictment, discussed his anticipated testimony, predicted federal enforcement action, and cultivated the appearance of federal law-enforcement knowledge and authority—all while concealing that the speaker was an FBI Special Agent who personally profited from trades against Nikola.

2. Those allegations describe a profound betrayal of the obligations accompanying federal law-enforcement service. Essick did not undertake the conduct alleged here on behalf of the United States.

3. He did it for himself, he did it in concert with others, and he did it for money.

4. At various times from 2020 through 2022, Essick took short positions in Nikola securities and publicly boasted of profiting from those trades. He participated in the campaign against Milton and his prospective defense witnesses through accounts that concealed his identity as an FBI Special Agent.

5. While concealing his identity, Essick cultivated the appearance that he possessed advance knowledge of federal enforcement activity. He demanded that Mr. Roycht "resign

immediately and turn states evidence," repeatedly predicted criminal consequences, and announced approximately one month before the indictment that the "feds are coming."

6. Defendants directed their campaign at prospective defense witnesses, including Mr. Roycht. Their repeated accusations, exposure of accounts associated with him, and calls for his prosecution made involvement with Plaintiff a source of personal apprehension. As the criminal case proceeded, they continued targeting Mr. Roycht while publicly discussing his anticipated testimony.

7. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). At the center of that guarantee stands the right of an accused to put on a defense—a right the Supreme Court has described as requiring "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

8. That right is not self-executing. It depends critically on the willingness of witnesses to come forward and speak freely. Threats against prospective witnesses can deprive an accused of material assistance in preparing and presenting his defense.

9. For that reason, courts have long held that driving a witness from the stand by threat or intimidation strikes at due process itself. *See Webb v. Texas*, 409 U.S. 95, 98 (1972).

10. Congress has gone further and made such conduct independently actionable in damages when it is committed by private persons. It recognized more than 150 years ago that this danger does not come only from the government. Specifically, in the aftermath of the Civil War, private conspiracies (most notoriously the Ku Klux Klan) set out to undermine the integrity and efficacy of federal courts by terrorizing those who appeared in them. Congress responded with

section 2 of the Civil Rights Act of 1871, 17 Stat. 13, the statute now codified in relevant part at 42 U.S.C. § 1985(2).

11. As the Supreme Court has explained, "protection of the processes of the federal courts was an essential component of Congress' solution to disorder and anarchy in the southern States," and Congress therefore enacted a statute prohibiting "intimidation of parties, witnesses, and jurors in federal courts." *Kush v. Rutledge*, 460 U.S. 719, 724, 726 (1983).

12. Section 1985(2) is therefore one of the comparatively few federal statutes that reaches purely private conduct aimed at obstructing the federal judicial process. Unlike 42 U.S.C. § 1983, its first clause requires no state action. And unlike other portions of the same statute, it requires no racial or class-based animus, because it protects a federal institution directly. Congress made the deliberate judgment that the integrity of a federal criminal trial is too important to limit its protections only to cases involving government actors. This case falls squarely within that statutory purpose.

13. Defendants' principal witness target was Jason Roycht, a former Nikola executive who possessed direct percipient knowledge of the matters at issue and who was a prospective witness for the defense. Federal investigators had interviewed Roycht on April 5, 2021.

14. Before and during the federal prosecution, Defendants publicly and repeatedly demanded Mr. Roycht's indictment, declared that he "should certainly be indicted for #FRAUD," and predicted that he "will likely also be indicted for FRAUD."

15. After Mr. Roycht publicly questioned the connection between accounts participating in the campaign, Lackey's @InsiderNikola account exposed an anonymous account associated with him and warned: "You're digging a hole you are not going to be able to get out of,

Jason." During the criminal trial, Essick publicly stated that Mr. Roycht "better be preparing himself to get on the stand."

16. The campaign affected Plaintiff's access to Mr. Roycht as a prospective defense witness. When Plaintiff's counsel requested a meeting, Mr. Roycht declined. He feared that becoming publicly associated with the defense would expose him to further personal attacks, and Defendants' harassment was a significant factor in his decision.

17. On March 27, 2025, Plaintiff received a full and unconditional Presidential pardon for the offenses of conviction in United States v. Milton.

18. Defendants' interference restricted Plaintiff's access to a prospective witness with firsthand knowledge of the events at issue. Plaintiff brings this action to recover for the resulting deprivation of witness assistance in preparing and presenting his defense.

## PARTIES

19. Plaintiff Trevor R. Milton is a natural person and a citizen and domiciliary of the State of Wyoming. Plaintiff is the Founder and former Chief Executive Officer of Nikola and was the defendant in *United States v. Milton,* No. 1:21-cr-00478 (S.D.N.Y.).

20. Defendant Christopher S. Essick is a natural person and, upon information and belief, a citizen and domiciliary of the State of New Jersey, residing in Ridgewood, New Jersey. Upon information and belief, Defendant Essick is a Special Agent of the Federal Bureau of Investigation assigned to the Counterintelligence Division of the New York Field Office. *See United States v. Chen*, No. 7:23-mj-04263-UA (S.D.N.Y. May 24, 2023) (criminal complaint sworn and signed by Defendant Essick, identifying himself therein as "a Special Agent with the

Counterintelligence Division of the FBI's New York Field Office"). Defendant Essick is sued in his individual capacity only.

21. Upon information and belief, Defendant Essick operated and controlled the pseudonymous social media accounts @CntrlScrut1nizr and @lfxs1212 on the platform now known as X, and the pseudonymous accounts u/BiggieTKB and u/FixMedical9278 on the platform Reddit.

22. Defendant Paul Lackey is a natural person and a citizen and domiciliary of the State of Oregon. Upon information and belief, Defendant Lackey operated and controlled the pseudonymous account @InsiderNikola and the account @holliemaea on the platform now known as X. Defendant Lackey testified as a witness for the government at the trial of *United States v. Milton*.

23. Non-party Jason Roycht is a natural person who served as Vice President of Technology Development at Nikola Corporation. Roycht possessed direct percipient knowledge of matters at issue in *United States v. Milton* and was a prospective witness for the defense in that proceeding. Roycht was interviewed by the government on or about April 5, 2021.

## **JURISDICTION AND VENUE**

24. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States, specifically 42 U.S.C. § 1985(2). This Court additionally has jurisdiction under 28 U.S.C. § 1343(a)(1).

25. This Court has personal jurisdiction over Defendants Essick and Lackey because they intentionally directed their tortious conduct at the State of Utah. Their conduct was not, as in the case of a publication merely circulated worldwide, connected to Utah only because Plaintiff

happened to suffer harm here. Utah itself was a focal point of the campaign: Defendants published statements about property situated in Utah, addressed themselves to a Utah audience and to an identified Utah community, and directed their communications to persons they identified and addressed as Utahns.

26. Defendants' statements were not incidentally about a Utah resident; they were about Utah. Defendant Essick published repeatedly concerning Plaintiff's Utah residences and Utah-situated property, including on or about August 2, 2020 ("It's at his 36 million dollar cabin in utah"), August 3, 2020 ("30 plus million on his cabin in utah"), and September 11, 2020 ("news reports showed him at the UTAH cabin the MORNING the @HindenburgRes [report] broke").

27. Defendant Essick also addressed himself directly to a Utah audience and to Plaintiff's standing within an identified Utah community. On or about September 20, 2020 he wrote: "Trevor and his family obviously have a lot of enemies in Utah." On or about May 7, 2021 he wrote: "the people of Utah DO NOT like Trevor... wonder why." He published repeatedly concerning Plaintiff's and his family's standing within The Church of Jesus Christ of Latter-day Saints, including on or about May 5, 2021 ("shame on you and your brother for ripping off the LDS community"), May 21, 2021 ("the LDS got burned MULTIPLE TIMES by this family"), and June 19, 2021 ("Trevor and his father have been BOTH very influential people in the LDS community").

28. Upon information and belief, Defendant Essick's archive contains approximately 63 messages referring to Utah, or to The Church of Jesus Christ of Latter-day Saints, in connection with Plaintiff.

29. Defendant Essick further directed his communications to a person he identified and addressed as located in Utah. The account @life_utah, which displayed the name “Utah is Life” and a University of Utah avatar, was one of his most frequent correspondents. Upon information and belief, Defendant Essick published more than 13,000 messages tagging that account, of which approximately 6,006 were published between July 29, 2021 and October 14, 2022, while the federal criminal proceeding was pending.

30. Defendant Essick understood and treated that account as a Utah correspondent. On or about June 19, 2021 he wrote to it: “as some one from UTAH you KNOW the influence the MILTONS have had in that community.” On or about March 19, 2023 he wrote: “you utah boys are a easy mark in the big city.” Plaintiff alleges that Defendant Essick believed he was coordinating with a person in Utah and directed his conduct accordingly.

31. Lackey also engaged directly with @life_utah in the campaign against Mr. Roycht. On December 7, 2020, replying to that account, Lackey continued attributing the @CapitalistTalk account to Roycht, stating that it was “100 percent the same as the old Tik0la_Nesla account” and that he was “90 percent sure that’s Jason Roycht.” On March 24, 2022, while the prosecution was pending, Lackey again addressed @life_utah in a thread also tagging Essick and Roycht, asking: “Is that even legal in Utah?”

32. During the trial, Essick brought the Utah charge and Mr. Roycht’s anticipated testimony into these same exchanges. On September 12, 2022, in a message tagging Lackey’s @InsiderNikola account, @life_utah, and Roycht, Essick described the prosecution as involving “three counts of fraud related to $NKLA and one related to his real estate purchase in Utah.” One week later, in another message tagging those same accounts, Essick stated that “Roycht better be

preparing himself to get on the stand" and accused him of having "parrotted EVERYONE of Trevor's LIES."

33. Plaintiff's reputational, professional, and economic interests were centered in substantial part in Utah. Nikola was founded in Salt Lake City, Utah. Plaintiff's family and community ties were in Utah, and Plaintiff owned Utah real property, including the Wasatch Creeks Ranch that was itself the subject of a count of the superseding indictment. Defendants' statements were addressed to Plaintiff's standing within that Utah community, and Defendants knew and intended that the effects of their coordinated campaign against Plaintiff would be felt in Utah. Plaintiff does not allege that he resided in Utah throughout the relevant period; he alleges that Defendants deliberately aimed substantial portions of their conduct at Utah. Defendants' exchanges with the account they engaged as a Utah participant also included identifying and targeting Mr. Roycht, accusing him of complicity, and discussing his anticipated testimony. Those exchanges formed part of the same coordinated campaign that made assisting Plaintiff's defense a source of personal apprehension for Roycht.

34. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background: Nikola, the Short-Seller Report, and the Federal Prosecution

35. Nikola was founded by Plaintiff to design and build hydrogen fuel-cell and battery-electric commercial trucks and the refueling infrastructure to support them. In June 2020, Nikola became a publicly traded company through a merger with a special purpose acquisition company, and its shares began trading on the Nasdaq Stock Market under the symbol NKLA.

36. Plaintiff is the Founder and was the public face of Nikola. He promoted Nikola extensively through social media and in interviews and media appearances, and he was widely identified with the company and its technology.

37. Nikola's rise attracted substantial short interest. Traders who had sold Nikola shares short—that is, who had taken positions that would become profitable if the share price fell—stood to gain financially from public statements that damaged confidence in the company and its founder.

38. On September 10, 2020, Hindenburg Research, a short-selling research firm, published a report asserting that Plaintiff and Nikola had misrepresented the company's technology and progress. Hindenburg disclosed that it held a short position in Nikola securities. The report received immediate and widespread national media coverage, and Nikola's share price declined sharply.

39. Plaintiff resigned from Nikola on or about September 20, 2020.

40. On July 29, 2021, an indictment charging Plaintiff with securities fraud and wire fraud was unsealed in the Southern District of New York.

41. On the same day, the Securities and Exchange Commission filed a parallel civil enforcement action captioned *SEC v. Milton*, No. 1:21-cv-06445 (S.D.N.Y.).

42. The government's theory at trial was that Plaintiff had made false and misleading public statements to retail investors concerning Nikola's products, technology, and state of development, including statements concerning the company's trucks, its hydrogen production, and its battery technology.

43. The central contested questions in the prosecution included those technical and internal to Nikola: what the company had in fact designed and built; what its engineers and

executives knew and had communicated about the state of that work; and what Plaintiff had been told, and understood, when he spoke publicly.

44. Nikola personnel who worked on the technology, participated in its development and evaluation, and communicated with Plaintiff had firsthand knowledge of those subjects. They could describe the work performed inside the company and the information conveyed to Plaintiff before he made the public statements at issue.

45. Jason Roycht was such a person. As Vice President of Technology Development, Roycht had direct percipient knowledge of Nikola's technology programs, of the company's diligence concerning outside technology, and of communications with Plaintiff on those subjects. He was a prospective witness for the defense.

46. Federal investigators interviewed Roycht on or about April 5, 2021.

47. Plaintiff faced substantial criminal penalties if convicted. The possible punishment on one count included a sentence of up to 25 years in prison.

48. The defense rested on October 13, 2022. On October 14, 2022, the jury convicted Plaintiff on one count of securities fraud and two counts of wire fraud and acquitted him on a further count of securities fraud. On December 18, 2023, Plaintiff was sentenced to four years' imprisonment, fined $1,000,000, and made subject to forfeiture of over $660,000,000.

49. On March 27, 2025, Plaintiff's conviction was the subject of a full and unconditional Presidential pardon.

50. At all times between July 29, 2021 and October 14, 2022, a proceeding was pending in a court of the United States within the meaning of 42 U.S.C. § 1985(2).

**B. <u>The Conspiracy and Its Members</u>**

51. Beginning in or about 2020, Defendants and others acting in concert with them coordinated a sustained public campaign against Plaintiff, Nikola, and persons associated with them, including those who the government was interviewing.

52. By no later than early 2021, and continuing through the trial in *United States v. Milton*, the object of that coordinated campaign included intimidating and deterring persons with knowledge about the anticipated and later-pending federal criminal proceeding, among them Jason Roycht. By January 2021, Defendants were publicly asserting that Nikola was under federal criminal investigation, demanding that Roycht cooperate with prosecutors and "turn states evidence," and warning that former employers of Nikola executives would face legal consequences of their own.

53. Certain of the acts alleged below occurred before the indictment was unsealed on July 29, 2021. Those acts are alleged to establish the formation, participants, methods, and purpose of an ongoing conspiracy that continued after the federal proceeding became pending. They are also relevant because Defendants were aware before July 29, 2021 that federal criminal proceedings were impending: Defendant Essick publicly stated on or about January 2, 2021 that Nikola was "under DOJ and SEC investigation for Fraud," and on or about June 30, 2021—a month before the indictment—that the "feds are coming." *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994).

54. Defendants did not act independently or in parallel. They coordinated their conduct directly, shared information among themselves, and coordinated their publications.

55. For example, on August 22, 2020, Mr. Roycht publicly stated that he suspected the accounts @Mitchroark1 and @InsiderNikola were operated by the same person. Within minutes,

the @InsiderNikola account—operated by Defendant Lackey—responded by publicly exposing an unrelated personal account belonging to Roycht, stating: "Shouldn't you be posting from your @tik0la_nesla account Jason?"

56. Later the same day, at approximately 2:17 p.m., Defendant Lackey posted to Roycht: "You're digging a hole you are not going to be able to get out of, Jason."

57. On September 10, 2020, Essick and Lackey exchanged public messages about Roycht. Essick, using @lfxs1212, demanded that Roycht resign and "turn states evidence." Approximately four minutes later, Lackey, using @InsiderNikola, responded: "He is kinda a dick on his @TIK0LA_NESLA account though..."

58. On December 7, 2020, Lackey publicly identified @CapitalistTalk as "very likely a sock puppet account belonging to Nikola VP Jason Roycht." That identification was false; Roycht did not operate the account. Essick reinforced the accusation, responding that it "certainly sounds like a @JasonRoycht anon account." Their exchange then moved from speculation to certainty: Lackey declared, "It's him," and Essick agreed, "yup same goofy gifs."

59. Essick thus joined Lackey in publicly attributing the same account to Roycht. Their reinforcement of that false identification was part of the coordinated campaign in which they exchanged information, engaged the same participants, and amplified accusations against Roycht.

60. Before and during the federal prosecution, Essick published thousands of messages tagging Lackey's @InsiderNikola account. Their exchanges included accusations against Roycht and discussion of the witnesses expected to appear at Plaintiff's trial.

61. Their direct exchanges continued during Plaintiff's trial. On September 15, 2022, Essick told Lackey, "great job too bad we couldnt meet for a drink of hydrogen ice water." The

following day, Lackey told Essick that he had not been impressed with the defense's cross-examination, and Essick responded, "they really have no case."

### C. <u>Concealed FBI Status, Financial Motive, and Consciousness of Wrongdoing</u>

62. Essick repeatedly boasted of profits from trading against Nikola. On March 14, 2021, he wrote that he had "short[ed] Nikola from 55 down to 15" and "took my profit off the backs of the bag holders," adding "currently no position." During the prosecution, on May 17, 2022, he again boasted: "ive played this on the short side from trevor's days.. paid me many times over.. no position currently."

63. Essick boasted of his trading profits from behind a concealed identity. He did not disclose that the person participating in the campaign against Milton and his prospective defense witnesses was a Special Agent of the Federal Bureau of Investigation.

64. That concealment mattered for reasons beyond avoiding public accountability. Defendant Essick's responsibilities as an FBI Special Agent did not disappear when he left the office or communicated through personal accounts. Department-wide guidance reminded employees that the standards governing their online communications applied "at all times," including when they were "not at work and not using government equipment." *See* Memorandum from James M. Cole, Deputy Att'y Gen., *Guidance on the Personal Use of Social Media by Department Employees* 1, 4 (Mar. 24, 2014). The FBI separately maintained a policy guide governing media relations, external communications, and employees' personal use of social media. *See* FBI, *Public Affairs Policy Guide: Media Relations, External Communications, and Personal Use of Social Media*, 1002PG.

65. Those standards specifically addressed communications concerning Department cases and investigations. Department employees were instructed not to comment on such matters when their comments could reveal nonpublic information, influence an investigation or proceeding, or adversely affect a defendant, party, or witness. Federal regulations likewise provided that "[a]t no time" may Department personnel furnish publicly communicable statements or information reasonably expected to influence a pending or future trial, and specifically directed personnel to refrain from statements concerning a defendant's character, the identity, testimony, or credibility of prospective witnesses, or an opinion concerning the accused's guilt. 28 C.F.R. § 50.2(b)(2), (6)(i), (iv), (vi).

66. Nor did anonymity provide an exception. Department guidance expressly warned employees that the same standards applied when they communicated anonymously or through pseudonyms. *See* Cole Memorandum, *supra*, at 2–3. Plaintiff does not allege that Essick was acting on behalf of the United States; he alleges the opposite. But Essick could not shed the standards accompanying his federal employment simply by concealing that the anonymous speaker was an FBI Special Agent.

67. Against that backdrop, Essick's admitted reason for anonymity is especially significant. On or about September 10, 2020, he stated publicly: "YES i use THIS account to tweet about NKLA fraud anonymously so i dont get sued." His own statement thus confirms that the concealment was deliberate and was intended to shield him from accountability for the very campaign alleged here.

68. Upon information and belief, Essick operated at least four concealed accounts across X and Reddit, including the X accounts used during the campaign and prosecution and the

Reddit accounts used for the February 2026 publications alleged below, and took measures to prevent those accounts from being attributed to him.

### D. Pre-Proceeding Pressure on Mr. Roycht

69. On or about September 10, 2020, Defendant Essick, using the @lfxs1212 account and tagging Defendant Lackey's @InsiderNikola account, publicly demanded that Roycht "should do the right thing... resign immediately and turn states evidence before he becomes more entangled in this grif[t]."

70. Essick's demand placed Roycht personally at risk: he should resign and cooperate with prosecutors before becoming more deeply entangled in the alleged fraud. Essick subsequently reinforced that pressure by repeatedly calling for Roycht's indictment and predicting that federal authorities would pursue him.

71. On or about January 1, 2021, in a thread discussing Roycht and Mark Russell, who was then Nikola's president and chief executive officer, Essick warned that "their former employers Bosch and Worthington will have their own legal issues."

72. The pressure continued the following day. On or about January 2, 2021, in a message tagging both Mr. Roycht and @SEC_Enforcement, Essick wrote that Nikola was "under DOJ and SEC investigation for Fraud."

### E. Essick's Repeated Invocations of Federal Enforcement

73. Essick repeatedly brought federal enforcement into his public accusations against Mr. Roycht. He tagged federal authorities in messages naming Mr. Roycht, called for his prosecution, and predicted that federal authorities would pursue other Nikola executives.

74. Moreover, Defendant Essick repeatedly cultivated the appearance that he possessed advance knowledge of federal enforcement activity. On or about June 30, 2021 — approximately one month before the grand jury indictment was unsealed— he wrote of the Milton family: "feds are coming." On or about July 31, 2021, two days after the indictment was returned, he wrote: "Trevor is a disgraced grifter who will now lose the only thing he cared about.. HIS MONEY.. Feds are HERE.. i told you so .. wont end well for Trevor."

75. He continued in that vein. On or about August 10, 2021 he published: "FEDS are coming for every thing. $NKLA." On or about August 11, 2021, tagging federal enforcement authorities, he published that "the @SEC_Enforcement and @SDNYnews will be coming for RUSSELL NEXT," naming the next Nikola executive he asserted would be pursued.

76. Defendants knew that Roycht was a prospective witness for the defense. They had monitored his public activity since 2020, had corresponded with him directly, had demanded that he "turn states evidence," and publicly discussed whether and when he would take the stand. The statements set out below concerning Roycht were directed at him with that knowledge. After the indictment, that pressure sharpened into repeated threats of criminal exposure directed at persons Defendants anticipated might testify in the federal proceeding.

### F. <u>Witness-Directed Conduct During the Pendency of the Federal Proceeding</u>

77. Once the federal proceeding became pending, the campaign did not abate. Upon information and belief, during the 443-day period from July 29, 2021 through October 14, 2022, Defendant Essick published messages concerning Plaintiff, Nikola, or Mr. Roycht on at least 392 separate days, including on 32 of the 33 days encompassing jury selection, trial, and deliberations. Within that sustained campaign, Defendant Essick repeatedly returned to the prospective

witnesses—who would testify, what they might say, and what consequences they could face for doing so.

78. On or about September 5, 2021—after the return of the indictment—Defendant Essick called for Roycht's indictment for supporting Plaintiff's claim that Nikola's headquarters was net zero.

79. On or about December 10, 2021, Defendant Essick published that Mr. Roycht and another Nikola executive "should certainly be indicted for #FRAUD $NKLA."

80. On or about March 13, 2022, at approximately 9:27 p.m., Defendant Essick published a message in which he tagged Roycht's account directly and expressly contemplated his testimony at the criminal trial: "Roycht has truly taken over the Trevor Milton role[.] I wonder if he gets called to testify about the solar panels on the roof at the trial." Essick thus publicly discussed Mr. Roycht as a possible trial witness while the prosecution was pending.

81. On or about May 20, 2022, Defendant Essick published a message directed to more than twenty-five accounts, stating that named Nikola executives were "ALL THERE and complicit.. as was internet troll and minion Jason Roycht who will likely also be indicted for FRAUD."

82. On September 19, 2022, while the trial was underway, Essick turned explicitly to Mr. Roycht's anticipated testimony: "Roycht better be preparing himself to get on the stand.. he was there for EVERYTHING and parrotted EVERYONE of Trevor's LIES." Coming after repeated demands for Roycht's indictment, the message linked his appearance as a witness to accusations that he had participated in the alleged fraud.

83. Essick continued pursuing Mr. Roycht even after Roycht blocked him. On October 5, 2022, another account reposted a screenshot of Roycht's public statement into Essick's thread. Essick responded: "jason blocks me.. ask him why he didnt go to the SEC when he heard Trevor telling outright lies." The @life_utah account joined the exchange and taunted Roycht: "SUE THEM. See how that goes." Essick then responded directly to that taunt with another accusation against Roycht. While the defense case remained open, the participants circulated Roycht's statements, reinforced accusations against him, and urged others to confront him.

84. Roycht was not the only prospective witness Defendant Essick pursued. Throughout the pendency of the criminal proceeding he tracked, taunted, and pressured persons he expected to be called, and he did so in the same public threads in which Roycht was tagged.

85. On or about September 16, 2021, at approximately 7:38 a.m., Defendant Essick wrote to an account he addressed as Plaintiff's brother: "trial starts April 4th Travis... get ready to be called to testify against your Brother." Twenty minutes later he added: "get ready dumbass.. ill be in the audience laughing at you on the stand."

86. He repeated the theme. On or about December 6, 2021: "are you ready for the trial in April? clean the concrete off your shoes before testifying dumbass." On or about January 7, 2022: "hey dumbass.. getting ready for trial in April? get ready to take the stand travis."

87. He also tracked which witnesses would be called. On or about December 2, 2021 he wrote that Plaintiff "wants to get back at all the nikola people who will testify against him in April." On or about January 20, 2022 he asked: "will Brady Kim and BRitton Worthen be called to the stand to testify? what about Heavy D?"

88. And on or about August 10, 2022 — weeks before trial, in a thread tagging Mr. Roycht — Defendant Essick wrote: "i cant wait til Travis gets on the stand and goes completely zonkers," and, in a second message the same morning, "no wonder Cappy has been MIA.. preparing to testify!!"

89. Each of the statements alleged in this section was published after July 29, 2021, while the federal criminal proceeding was pending.

90. Essick knew that Mr. Roycht was a prospective defense witness. In furtherance of his agreement with Lackey, he repeatedly linked discussion of Mr. Roycht's anticipated testimony with accusations of complicity and predictions of indictment. Essick intended those communications to make Mr. Roycht fear that assisting Plaintiff's defense would bring further personal targeting, public accusations, and criminal consequences, and to deter him from participating freely in the defense.

91. For the avoidance of doubt, Plaintiff does not base any claim in this action upon testimony given by any Defendant in any judicial proceeding. The conduct alleged herein is extrajudicial conduct only.

**G. Injury to Plaintiff**

92. Mr. Roycht was a prospective defense witness in *United States v. Milton*. Through his work at Nikola, he had firsthand knowledge of the company's technology programs, its evaluation and development of technology, and communications with Plaintiff concerning those subjects.

93. Mr. Roycht personally encountered the campaign against him. He followed the accounts, saw repeated accusations and calls for his prosecution, and blocked several of them,

including the accounts operated by Essick. The personal attacks continued after he resumed posting under his own name in 2021 and intensified around Plaintiff's indictment.

94. The exposure of Mr. Roycht's anonymous account, followed by publications about his education and background, made him fear that additional personal information was being collected about him. For a period in 2021, including around the indictment, he also feared for his own safety and that of his family. The continuing attacks made him apprehensive about drawing further attention to his association with Plaintiff.

95. Plaintiff's counsel requested a meeting with Mr. Roycht. He declined. By June 29, 2022, while the federal criminal proceeding was pending, Mr. Roycht had reconsidered whether to meet with defense counsel but continued to decline. He feared that becoming publicly associated with Plaintiff's defense would expose him to further personal attacks, and Defendants' harassment was a significant factor in his decision.

96. Defendants' campaign thereby restricted Plaintiff's access to Mr. Roycht in preparing his defense. His refusal deprived Plaintiff's counsel of the requested opportunity to meet with a prospective witness, discuss his firsthand knowledge, and obtain his assistance concerning the events at issue. Plaintiff rested his defense on October 13, 2022, without Mr. Roycht's testimony. At that point, the opportunity to obtain and use his assistance in preparing and presenting the defense at that trial had ended.

### H. <u>Concealment, Continuing Conduct, and Discovery of Essick's Identity</u>

97. Defendant Essick concealed his identity and account ownership through multiple pseudonymous accounts on X and Reddit. He used those accounts to participate in the campaign without identifying himself as an FBI Special Agent.

98. Defendant Essick's concealment was deliberate and admitted. On or about September 10, 2020, he stated publicly that he used the account in question anonymously "so i dont get sued." Upon information and belief, his concealed accounts included the two X accounts used during the campaign and prosecution and the two Reddit accounts used for the February 2026 publications alleged below.

99. Plaintiff did not learn of Defendants' harassment directed at Mr. Roycht until in or about February 2026. Before then, Plaintiff did not know that such harassment had contributed to Mr. Roycht's decision to decline the meeting requested by Plaintiff's defense counsel.

100. Although Plaintiff had learned Lackey's identity earlier, he did not know that Essick operated the accounts attributed to him in this Complaint until in or about February 2026. Identifying Essick as their operator also revealed that the person behind those accounts was an individual distinct from Lackey and an FBI Special Agent.

101. In or about February 2026, a review of the accounts' publications and related public records identified Essick as their operator. The review connected residence, vehicle, and location information visible in images published by the accounts; the operator's acknowledgment that he controlled another account; and distinctive activity across platforms. Those connections were compared with public records, including a sworn federal criminal complaint signed by Essick in his capacity as an FBI Special Agent.

102. Essick continued targeting Roycht after the October 2022 trial. Upon information and belief, in or about February 2026, more than three years after the verdict, Essick—operating through two separate concealed accounts on Reddit—published statements targeting Roycht by name and referring to his supposed "testimony" and to what he purportedly "said . . . on the witness

stand," even though Roycht had not testified at Plaintiff's trial. Those post-trial publications are alleged as evidence of Essick's identity and account ownership, his continuing animus toward Roycht, and the witness-directed nature of his conduct, and not as acts capable of deterring testimony in a proceeding that had already concluded.

**FIRST CAUSE OF ACTION**
Conspiracy to Deter a Party or Witness — 42 U.S.C. § 1985(2)
(Against All Defendants)

103. Plaintiff re-alleges and incorporates by reference all paragraphs of this Complaint set out above as though fully set forth herein.

104. The first clause of 42 U.S.C. § 1985(2) makes actionable a conspiracy of two or more persons to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein freely, fully, and truthfully.

105. A claim under the first clause of § 1985(2) requires neither state action nor racial or class-based invidiously discriminatory animus; the clause reaches purely private conspiracies directed at the processes of the federal courts.

106. Essick and Lackey knowingly agreed to deter Mr. Roycht from assisting Plaintiff's defense and testifying freely, fully, and truthfully in the federal criminal proceeding. They pursued that agreement through the coordinated conduct alleged above, including their direct exchanges concerning Mr. Roycht, their reinforcement of accusations against him, and the continuing pressure directed at him as a prospective defense witness.

107. The object of that conspiracy included deterring Roycht, a prospective witness in a pending federal criminal proceeding, from testifying freely, fully, and truthfully.

108. Defendants committed one or more overt acts in furtherance of the conspiracy, as set forth above.

109. Plaintiff was a party in the court of the United States in which the federal proceeding was pending.

110. As a direct and proximate result of Defendants' conspiracy, Plaintiff's access to Mr. Roycht as a prospective defense witness was restricted, and Plaintiff was deprived of the requested opportunity to obtain his assistance in preparing the defense. Plaintiff seeks recovery for those injuries independently of the outcome of the criminal proceeding.

111. Plaintiff is a person injured within the meaning of the remedial paragraph of 42 U.S.C. § 1985 and is entitled to recover damages occasioned by that injury against any one or more of the conspirators.

112. Each Defendant acted willfully, maliciously, and with reckless and callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against each Defendant based upon that Defendant's own conduct and state of mind.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Trevor R. Milton respectfully prays that the Court enter judgment in his favor and against Defendants as follows:

a. Awarding Plaintiff compensatory damages in an amount to be proven at trial for injuries caused by Defendants' conspiracy, including the loss or restriction of access to Mr. Roycht and his assistance as a prospective defense witness;

b. Awarding Plaintiff punitive damages against each Defendant individually, in an amount sufficient to punish that Defendant and to deter others similarly situated;

c. Awarding Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable authority;

d. Awarding Plaintiff prejudgment and post-judgment interest as permitted by law; and

e. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: October 13, 2026

**HATCH LAW GROUP, P.C.**

*/s/ Brent O. Hatch*
Brent O. Hatch
Adam M. Pace

**DYNAMIS LLP**
Robert S. Frenchman
Lance O. Aduba

*Attorneys for Plaintiff Trevor R. Milton*